FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

VERONICA M.,[1]

               Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

               Defendant.

No.   4:19-CV-5219-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Veronica M. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) improperly determining that the impairments did not meet or equal a listing; 3) discounting Plaintiff's symptom reports; and 4) improperly determining

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos.11 & 16.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

steps four and five based on an incomplete hypothetical question. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No.11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 16.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging an amended disability onset date of April 16, 2015.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Lori Freund.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 16, 2015, the alleged amended disability onset date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 40 & 202-17.

[19] AR 131-38 & 142-47.

[20] AR 36-103.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: lumbago/sciatica; chronic headaches; obesity; right toe spider bite with cellulitis; major depressive disorder; unspecified anxiety disorder; and attention-deficit hyperactivity disorder (ADHD);

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except that:

  > [S]he can only occasionally climb ladders/ropes/scaffolds and unprotected heights, but she can frequently climb stairs/ramps. She can frequently balance, stoop, kneel, crouch, and crawl. She needs to avoid concentrated exposure to noise, excessive vibration, hazards, and fumes, odors, dusts, gases, etc. She is limited to simple and repetitive tasks with no direct interaction with the general public. She can have superficial interaction with coworkers and supervisors, but should avoid tandem tasks. She cannot perform managerial type jobs or jobs requiring more than occasional decisionmaking or changes. She cannot perform any fast-paced or time production line work.

- Step four: Plaintiff could perform past relevant work of cleaner/housekeeping; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

1

2

numbers in the national economy, such as inspector and hand

packager, garment folder, and routing clerk.[21]

3

When assessing the medical-opinion evidence, the ALJ gave:

4

5

- great weight to the testifying opinion of Dr. Nancy Winfrey, Ph.D. and

  reviewing opinion of Olegario Ignacio, Jr., M.D.;

6

7

- some weight to the examining opinions of Bruce Eather, Ph.D. and

  Matthew Comrie, PsyD.; and

8

9

- little weight to the examining opinion of N.K. Marks, Ph.D., and

  treating evaluation of Caleb Ledford, ARNP.[22]

10

The ALJ also found that Plaintiff's medically determinable impairments

11

could reasonably be expected to cause some of the alleged symptoms, but that her

12

statements concerning the intensity, persistence, and limiting effects of those

13

symptoms were not entirely consistent with the medical evidence and other

14

evidence in the record.[23]

15

Plaintiff requested review of the ALJ's decision by the Appeals Council,

16

which denied review.[24] Plaintiff timely appealed to this Court.

17

18

_____

19

20

[21] AR 13-32.

[22] AR 24-25.

21

[23] AR 21-24.

22

[24] AR 2-7.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred by assigning little weight to Dr. Marks' opinion and failing to fully incorporate Dr. Eather's opinion in the RFC. As discussed below, the Court finds Plaintiff fails to establish the ALJ consequentially erred.

### 1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both

---

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[35] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[36] may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

---

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[35] *Lester*, 81 F.3d at 830.

[36] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

2.    <u>Dr. Marks</u>

In December 2014, psychologist Dr. Marks administered a psychodiagnostics evaluation of Plaintiff.[39] Dr. Marks diagnosed Plaintiff with generalized anxiety disorder (severe), major depressive disorder (recurrent moderate), ADHD (predominately combined type), and adjustment disorder with mixed anxiety and depressed mood. Dr. Marks opined that Plaintiff was "too distractible, depressed, and anxious to hold down a job. She is very concerned about her finances and her living situation. She is still struggling with some anxiety and depression."[40] Dr. Marks noted that Plaintiff had "not been successfully prescribed medication" but "strongly advised" such, and that "without ongoing psychotherapy and medication" Plaintiff's conditions would continue and therefore her prognosis was guarded.[41]

The ALJ gave little weight to Dr. Marks' opinion because 1) the opinion was inconsistent with Plaintiff's activities, 2) predated the disability period, and 3) was inconsistent with the medical evidence and Plaintiff's lack of mental-health treatment at that time.[42]

As to the ALJ's finding that Dr. Marks' "comments and scores" were inconsistent with "the range of activities [Plaintiff] performed," the ALJ

---

[39] AR 375-79 & 676-80.

[40] AR 379.

[41] *Id.*

[42] AR 24.

highlighted that Plaintiff engaged in household tasks, including laundry and cooking, shopped, attended to self-care, and helped her four children with homework.[43] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity.[44] Yet, "many home activities are not easily transferable to what may be the more grueling environment of the workplace."[45] Here, the ALJ's finding that Plaintiff's ability to engage in several household and child-related activities throughout the day and week was reasonably inconsistent with Dr. Marks' opinion that Plaintiff was too distractible, depressed, and anxious to hold down a job is supported by substantial evidence and is a specific and legitimate reason to discount Dr. Marks' opinion.

The ALJ also discounted Dr. Marks' opinion because the evaluation occurred about four months before the alleged disability period began and during a time that Plaintiff was not receiving mental health treatment.[46] On this record, that Dr. Marks' opinion predated (by four months) the alleged disability onset date of April 16, 2015, was not a specific and legitimate reason to discount Dr. Marks' opinion by itself. This is because Plaintiff's depression, anxiety, and attention deficit disorder

---

[43] AR 24.

[44] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[45] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[46] AR 25.

were ongoing. Therefore, Dr. Marks' close-in-time opinion was to be considered by the ALJ.[47]

However, no consequential error occurred because the ALJ considered Dr. Marks' opinion, assigning it little weight because it was inconsistent with Plaintiff's activities and with Plaintiff's lack of treatment for her mental health conditions at that time. Dr. Marks herself recognized that Plaintiff's mental health would improve with ongoing psychotherapy and medication.[48] Plaintiff argues the ALJ failed to appreciate that Plaintiff was participating in psychotherapy the second half of 2014 (during which she demonstrated severe symptomatology and limitations) and that she continued to demonstrate severe symptomatology during the alleged period of disability. The record does not support Plaintiff's argument.

Although Plaintiff appeared depressed and tearful during a mental evaluation in July 2014, she also exhibited logical thought content and fair insight and judgment.[49] Thereafter, but before her evaluation with Dr. Marks in mid-

---

[47] *See Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (requiring the ALJ to evaluate medical-opinion evidence that predated the alleged onset date of disability); *McQueen v. Colvin*, No. 3:15-cv-05893-JRC, 2016 WL 4009850, *2-3 (W.D. Wash. July 27, 2016) (analyzing case law discussing an ALJ's duty to consider medical evidence and opinions predating the alleged period of disability).

[48] AR 379.

[49] AR 384-85.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

December 2014, she attended two psychotherapy sessions.[50] Again, at these sessions she was depressed and tearful with a congruent mood and affect, but Plaintiff was dressed appropriately, engaged with the therapist, and discussed parenting and relationship skills to reduce the stress contributing to her depression and anxiety. It was not until August through December 2016 that Plaintiff participated in therapy approximately twice a month, during which it was noted that Plaintiff was sad or crying with normal concentration and thought content. Thereafter, in April 2017, it was noted that Plaintiff went without counseling for almost three months; during which time, her condition did not worsen but instead she continued to work on improving herself.[51] This record supports the ALJ's decision to discount Dr. Marks' opinion because the counseling records were inconsistent with Dr. Marks' disabled-opinion.

And although Caleb Ledford, ARNP opined, like Dr. Marks, that Plaintiff's mental health was likely to limit her ability to work for 4-6 months, he also indicated that Plaintiff would improve with counseling.[52] Moreover, Nurse Ledford's corresponding appointment notes reflect that Plaintiff was orientated with appropriate mood and affect with normal insight, judgment, and memory.[53]

---

[50] AR 386-92.

[51] AR 895-931.

[52] AR 683-85.

[53] AR 1033-36.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

On this longitudinal record, the ALJ reasonably found Dr. Marks' limiting opinion inconsistent with the record and with the finding that Plaintiff's non-exertional limitations would improve if she had ongoing and consistent psychotherapy and medication.[54]

     3.    <u>Dr. Eather</u>

In July 2015, Dr. Eather reviewed the medical evidence then of record.[55] He opined that Plaintiff had mild limitations with her activities of daily living and social functioning; moderate limitations with concentration, persistence, and pace; and moderate limitations with understanding and remembering detailed instructions but that Plaintiff was capable of simple routine tasks and well-learned complex tasks.

The ALJ gave some weight to Dr. Eather's opinion but also found that the record supported more cognitive, social, and adaptive limitations than those opined by Dr. Eather and therefore crafted a more-limiting RFC. Plaintiff argues the ALJ failed to incorporate Dr. Eather's opinion that Plaintiff would have some episodic lapses in concentration, persistence, and pace.

Plaintiff's argument fails to appreciate that the ALJ incorporated Dr. Eather's opinion by limiting Plaintiff to simple and repetitive tasks that did not

---

[54] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[55] AR 109-15.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

include any fast-paced or time-production line work.[56] Moreover, the RFC prohibits

direct interaction with the general public, restricts tasks to superficial interaction

with coworkers and supervisors (with no tandem tasks), and no managerial type

jobs or jobs requiring more than occasional decision-making or changes. The ALJ

rationally incorporated Dr. Eather's limitations into the RFC.

**B.    Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did

not meet or medically equal Listing 12.04, 12.06, and 12.11 singly or in

combination, and by failing to develop the record, or make a finding, as to Listings

1.04A and 11.02.

1.    Listing 1.04A

Plaintiff argues the ALJ failed to develop the record by not ordering an MRI

of Plaintiff's lumbar spine to determine whether nerve root/spinal cord compression

was present given the diagnosis of degenerative disc disease, limited range of

motion of the spine, radiating pain and numbness to the lower extremities,

weakness in her lower extremities, and a positive straight leg raise test.

Resultantly, Plaintiff argues the ALJ failed to make a Listing 1.04A finding.

Listing 1.04A is satisfied if (1) there is a disorder of the spine, such as

degenerative disc disease, (2) resulting in compromise of the nerve root or the

spinal cord (3) with evidence of nerve root compression characterized by (a) neuro-

---

[56] *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006.

anatomic distribution of pain, (b) limitation of motion of the spine, (c) motor loss (muscle weakness or atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and (d), if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[57]

Here, while the ALJ did not make a specific finding as to Listing 1.04A, the ALJ found "there has not been nerve root compromise with nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [or] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss."[58] The bulk of the medical records support the ALJ's rational finding that Plaintiff had full lower muscle strength, contrary to the February 2016 evaluation that suggested lumbar segmental dysfunction of hypermobility or instability with diminished strength in the lower extremities.[59] The ALJ rationally did not order an MRI.

2.    Listing 11.02

Listing 11.02 is the most closely analogous listing for migraines.[60] Listing 11.02 requires that migraine headaches be "documented by detailed description of

---

[57] 20 C.F.R. Ch. III Part 404, Subpt. P, App. 1, Listing 1.04A.

[58] AR 19.

[59] AR 22 (citing AR 628, 631, 729, 774, 1095, & 1163).

[60] HALLEX DI 24505.015(B)(7)(B) (example 2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

a typical [migraine headache]."[61] To be of equal severity and duration, Listing 11.02B requires the migraines occur at least once a week for at least three consecutive months, despite compliance with treatment.[62] Listing 11.02D requires the migraines occur at least once every two weeks for at least three consecutive months, despite adherence to prescribed treatment, and the claimant must have a marked limitation in physical functioning or one of the four areas of mental functioning.[63]

Plaintiff summarily argues the ALJ failed to properly consider Listing 11.02 for her frequent migraine headaches. But Plaintiff failed to support her conclusory argument with citations to the record. By failing to support her contention with law or facts, Plaintiff waived this argument.[64]

------------

[61] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.

[62] *Id.*

[63] *Id.*

[64] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."); *Carmickle v. Comm'r of Soc. Sec. Adm*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Moreover, the ALJ was not required to discuss every Listing and explain "why a claimant fails to satisfy every different section of the [L]isting," so long as the ALJ's "'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'" Here, the ALJ rationally did not discuss whether Plaintiff satisfied 11.02 as there is no evidence that Plaintiff's migraines were of sufficient duration or quantity to satisfy Listing 11.02.[65]

3.    Listings 12.04, 12.06, and 12.11

Listing 12.04 disorders, which include depressive, bipolar, and related disorders, are "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."[66] Symptoms and signs can include "feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal."[67] The impairment must also meet paragraphs B and C criteria. Paragraph B criteria are met if the impairment results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social

---

[65] *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

[66] 20 C.F.R. Pt. 404, Subpt. P, App 1.

[67] *Id.* at Listing 12.04.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

functioning; marked difficulties in concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[68] Paragraph C criteria are met if the mental disorder is serious and persistent, i.e., there is a medically documented history of the existence of the disorder over a period of at least two years and the claimant relies on ongoing medical treatment to diminish the symptoms and signs of the mental disorder, and despite the ongoing treatment the claimant has only achieved marginal adjustment.[69]

Listing 12.06 includes anxiety and obsessive-compulsive disorders and criteria A, B, and C must be met.[70]

Listing 12.11 includes neurodevelopmental disorders, such as borderline intellectual functioning, which are often characterized by onset during the developmental period.[71] Signs or symptoms may include underlying abnormalities in cognitive processing, deficits in attention or impulse control, low frustration tolerance, excessive or poorly planned motor activity, difficulty with organizing, repeated accidental injury, and deficits in social skills.[72]

---

[68] 20 C.F.R. § 404, Subpart P, App. 1.

[69] *Id.* at Listing 12.00.G.

[70] *Id.* at Listing 12.06.

[71] *Id.* at Listing 12.11.

[72] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ found "the severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11."[73] Relatedly, the ALJ found Plaintiff had a mild limitation with adapting or managing herself and moderate limitations with understanding, remember, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.[74]

Plaintiff challenges the ALJ's findings as to Listings 12.04, 12.06, and 12.11 but again fails to support her argument with evidence. This challenge is therefore waived. Moreover, the ALJ's finding is rationally supported by the medical record and by the ALJ's discussion and interpretation of the longitudinal record in other sections of the ALJ's decision wherein the ALJ explains why Plaintiff had mild to moderate nonexertional limitations.

**C.   Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[75] Second, "[i]f the claimant meets

---

[73] AR 19.

[74] AR 19-20.

[75] *Molina*, 674 F.3d at 1112.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[76] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the longitudinal objective medical evidence, recommended conservative treatment, improvement with treatment, and her activities.[77]

First, as to the ALJ's finding that Plaintiff's physical and mental symptom reports were inconsistent with the longitudinal objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[78] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[79] "Objective medical evidence" means signs, laboratory findings, or both.[80] In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements

---

[76] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[77] AR 21-24.

[78] *See Rollins*, 261 F.3d at 857.

[79] *Id.*

[80] 20 C.F.R. § 416.902(k).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

(symptoms). Signs must be shown by medically clinical diagnostic
techniques. Psychiatric signs are medically demonstrable phenomena
that indicate specific psychological abnormalities, e.g., abnormalities
of behavior, mood, thought, memory, orientation, development, or
perception, and must also be shown by observable facts that can be
medically described and evaluated.[81]

Evidence obtained from the "application of a medically acceptable clinical

diagnostic technique, such as evidence of reduced joint motion, muscle spasm,

sensory deficits, or motor disruption" is considered objective medical evidence.[82]

Here, the ALJ found the "longitudinal record showed some signs of or consistent

with diminished [physical] functioning, but not to the full extent alleged."[83] The

ALJ highlighted that, notwithstanding reduced lower extremity strength during a

physical therapy evaluation in February 2016, Plaintiff routinely had normal lower

extremity strength bilaterally, a normal gait, full range of lumbar motion, even

with her spider bite symptoms.[84] Moreover, the imaging of Plaintiff's foot reflected

---

[81] *Id.*

[82] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence
(2019).

[83] AR 21.

[84] AR 21-22 (citing AR 1131-32, 445-46, 583, 628, 631, 755, & 774): *see also* AR 729,
1095, & 1163).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

minor conditions once the third toe was abscised following the spider bite.[85] On this record, the ALJ reasonably found that Plaintiff's reports of severe back pain and foot pain and swelling were inconsistent with the objective medical evidence.

As to Plaintiff's mental health, the ALJ noted that Plaintiff's longitudinal presentation remained largely unremarkable as she presented with normal or appropriate affect, mood, and behavior.[86] Although these cited records arise from medical appointments for Plaintiff's foot and therefore by themselves may be insufficient supporting evidence for the ALJ's findings as to Plaintiff's mental-health symptoms,[87] the ALJ also highlighted that Plaintiff's psychotherapy notes indicate depressed and anxious affect but reflected normal psychomotor behavior, attention, concentration, and demonstrated memory.[88] Based on the longitudinal

---

[85] AR 654, 776, & 826; AR 783-84 (noting a "small amount of bone marrow edema" and "of cystic degenerative changes" at the base of the third metatarsal); AR 824 ("subtle superior calcaneal spur" on the right foot); AR 740 ("no [facture], no dislocation no soft tissue air"); & AR 599 ("No evidence for fracture or dislocation seen. Mild soft tissue prominence of the third digit noted predominately involving the dorsal aspect which may indicate an infectious/inflammatory cellulitis").

[86] AR 23 (citing AR 753, 774, 776, & 785).

[87] *See, e.g.*, AR 753, 774, 776, & 785.

[88] AR 23 (citing AR 872, 878, 929, 932-33, 938-39, & 944-45).

record, the ALJ reasonably considered that Plaintiff's reported disabling mental health symptoms were inconsistent with the objective medical evidence.

Second, the ALJ discounted Plaintiff's reports of disabling foot pain as the treating podiatrist recommended conservative therapy, which improved her symptoms. For instance, Dr. Brian Freeman, DPM recommended that Plaintiff use a boot for 4-6 weeks for weight-bearing activities and thereafter wear stiff-soled, supportive athletic shoes with an orthotic insert, have a cortisone injection, and engage in physical therapy.[89] After a cortisone injection, Plaintiff reported improved foot symptoms.[90] That medical providers recommended conservative treatment for Plaintiff's foot condition—and she received relief from such recommended treatment, which did not include elevating her foot—was a clear and convincing reason to discount Plaintiff's reported symptoms associated with her foot and reported need to elevate it during the work day.[91]

Third, the ALJ discounted many of Plaintiff's other symptom complaints, such as dizziness, body aches, and nausea, because after Plaintiff underwent exploratory surgery to remove the parathyroid adenoma, Plaintiff's health

---

[89] AR 784-86.

[90] AR 865.

[91] *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (considering evidence of improvement).

improved.[92] Again that Plaintiff's symptoms improved with treatment, was a clear and convincing reason to discount these symptoms.[93]

Fourth, the ALJ discounted Plaintiff's physical and mental health symptoms due to the scope and extent of her activities.[94] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[95] Here, the ALJ highlighted that Plaintiff cared for her children throughout the relevant period, prepared meals daily, helped with homework, cleaned her house, cared for her infant niece, babysat a grandchild, and spent many days out in the community.[96] In addition to these activities, Plaintiff began cosmetology school in fall of 2017, attending for 30 hours a week.[97] Based on this record, the ALJ reasonably considered these activities, cumulatively, to be inconsistent with Plaintiff's reported disabling symptoms.

---

[92] AR 22-23 (citing AR 796, 800-01, 806, 818, 1119, & 1140). *See also* AR 61-63 & 67-68.

[93] *Morgan*, 169 F.3d at 599-600.

[94] AR 23.

[95] *Molina*, 674 F.3d at 1113.

[96] AR 23 (citing AR 268-75, 868, & 890).

[97] AR 56-58.

1

2

     In summary, Plaintiff fails to establish the ALJ erred by discounting

Plaintiff's symptom reports.

3

**D.    Steps Four and Five: Plaintiff fails to establish error.**

4

5

6

7

8

9

10

11

12

13

     Plaintiff argues the ALJ erred at steps four and five because the vocational

expert's testimony was based on an incomplete hypothetical that failed to include

the opined absenteeism and unproductiveness resulting from Plaintiff's physical

and mental impairments. Plaintiff's argument is based entirely on her initial

arguments that the ALJ erred in considering the medical-opinion evidence and

Plaintiff's symptom reports. For the above-explained reasons, the ALJ's

consideration of the medical-opinion evidence and Plaintiff's symptom reports were

legally sufficient and supported by substantial evidence. The ALJ did not err in

assessing the RFC or finding Plaintiff capable of performing past work and other

work existing in the national economy.[98]

14

**V.    Conclusion**

15

Accordingly, **IT IS HEREBY ORDERED**:

16

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

17

18

19

20

21

22

[98] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is

proper for the ALJ to limit a hypothetical to those restrictions supported by

substantial evidence in the record); *Rounds*, 807 F.3d at 1006 ("[T]he ALJ is

responsible for translating and incorporating clinical findings into a succinct

RFC.").

23

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is

**GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 10th  day of June 2020.


        s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge